**RPJ ENERGY FUND MANAGEMENT, INC., Plaintiff,**

v.

**Clarence Gordon COLLINS, Defendant.**

**Civ. No. 4–82–1278.**

United States District Court,
D. Minnesota,
Fourth Division.

Dec. 16, 1982.

Roger J. Magnuson, Marianne E. Durkin, Dorsey & Whitney, Minneapolis, Minn., for plaintiff.

Robert J. Hennessey, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

This matter was commenced by plaintiff RPJ Energy Fund Management, Inc. (RPJ) to confirm an arbitration award of $225,000 entered in its favor against defendant Clarence Gordon Collins. The application is made pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1–14 (the Act), and diversity jurisdiction is invoked under 28 U.S.C. § 1332. Before the court are RPJ's motion to confirm the award and Collins' motions to vacate the award, to dismiss the application or to stay these proceedings, and to certify certain questions to the Minnesota Supreme Court.

*Background*

The parties began business negotiations in early 1980 with respect to the purchase by RPJ from Collins of three oil and gas leases located in Adair and Green counties in the state of Kentucky. RPJ is a Minnesota corporation with its principal place of business in Burnsville, Minnesota. Collins is an individual residing in Campbellsville, Kentucky. RPJ ultimately purchased the three leases in March of 1980.

In June of 1980, RPJ and Collins entered into a Drilling and Operating Agreement (the Agreement) by which Collins was to act as operator of the existing wells on the leases and to drill and operate four new wells. This Agreement contained an arbitration clause which stated:

> In the case of disagreements as to any matter related to operations hereunder which cannot be settled amicably, then upon five (5) days written notice, either party may submit such disagreement to

the American Arbitration Association for settlement. Pending the decision of the Board of Arbitrators, the parties hereto shall remain bound by the express terms hereof. Any and all decisions rendered by the majority of the Board of Arbitrators shall be final and binding upon the parties hereto, and adjustments shall be made in conformity with their interests as they may appear. Cost of the arbitration is to be borne by the parties equally.

Thereafter, disputes arose between the parties. According to RPJ, production decreased dramatically after Collins took over operation of the leases, despite the fact that he had allegedly drilled four new wells and had charged RPJ significant amounts for allegedly improving the production capacity of some of the existing wells. In April of 1981, RPJ terminated Collins as operator of the leases. Upon investigation of the wells after Collins' termination, RPJ alleges that it discovered clear and substantial evidence of neglect, disrepair, and fraud.

On or about June 11, 1981, RPJ filed a claim against Collins with the American Arbitration Association pursuant to the arbitration clause of the Agreement. RPJ asserted initially before the arbitration panel that Collins had breached the Agreement by not completing the four new wells as required, by substantial overbilling of costs and expenses of operation, by unauthorized expenditures in operation of the wells, by negligent and unlawful operation of the 14 existing wells, and by other failures to abide by its terms. RPJ sought damages of over $1,000,000. Collins denied RPJ's allegations and counterclaimed for approximately $81,000, allegedly the balance due for work performed on the leases. Collins also sought $100,000 in punitive damages.

Prior to the arbitration hearing, Collins moved to limit the issues which could be arbitrated. RPJ wished to arbitrate a claim of fraud in the inducement of the Agreement and of the underlying lease purchase agreement, as well as claims relating to the wells. The panel ruled that it would hear evidence on all claims asserted by either party and reserved ruling on Collins' motion until it made its final award.

During the arbitration hearing June 21–25, 1982, the panel heard testimony in Minneapolis. Both parties were represented by counsel and had full opportunity to examine and cross-examine witnesses who appeared. The panel also received numerous affidavits, exhibits, and deposition transcripts from other proceedings. The panel apparently reconvened the hearing on July 13, 1982 to permit the parties to submit any additional rebuttal testimony and to make closing arguments.

Collins argues that he repeatedly objected to the submission of evidence which he felt was inflammatory, prejudicial, and irrelevant. He has expressed the concern that admission of evidence on the fraud in the inducement claim prejudiced the rest of his case. The objections were overruled. At the close of the hearings, Collins moved the panel to disqualify itself.

On September 24, 1982, the panel rendered its award as follows:

1. The motion to disqualify Panel is hereby denied;

2. The claim of fraud in the inducement is within the jurisdiction of the Panel and is hereby denied;

3. The contract applied to the drilling and completion of four (4) new wells and the operation of existing wells;

4. RESPONDENT, C.G. Collins, breached the contract. RESPONDENT shall pay to CLAIMANT, RPJ Enterprises, Inc., the sum of TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS ($225,000.00);

5. The counterclaim of RESPONDENT is hereby denied;

6. The claims for punitive damages, attorneys fees and costs are hereby denied;

7. The administrative fees of the American Arbitration Association and the compensation and the expenses of the arbitrators shall be borne as incurred.

RPJ filed its application herein for confirmation of the award on September 29, 1982 pursuant to 9 U.S.C. § 9. Sometime later Collins moved in state court for vacation of the award; the motion is apparently now

scheduled to be heard in state court in January, 1983.

*Discussion*

The parties disagree as to whether federal or state arbitration law applies in this diversity action.

RPJ argues that the federal Act applies because the contract evidences "a transaction involving commerce," 9 U.S.C. § 2, and that under the Act, fraud in the inducement claims are arbitrable if the arbitration clause is broad enough to cover them. RPJ contends that the arbitration clause in question here is sufficiently broad.

■ Collins argues that state substantive law applies because this is a diversity action. Under the Minnesota Arbitration Act, Minn.Stat. §§ 572.08–.30, the arbitration panel does not have jurisdiction over fraud in the inducement claims unless the language of the arbitration clause is sufficiently broad, and clauses in two recent cases have been found not broad enough to cover such claims. *See Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599 (Minn.1982); *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 197 N.W.2d 448 (1972). Collins argues that the language in the Agreement here is not markedly different from that in the contract in *Atcas* and that the award should be vacated pursuant to Minn.Stat. § 572.19 subd. 1(3) because the arbitrators exceeded their powers.

Federal courts have consistently ruled that even in a diversity case federal substantive law developed under the Act is to be applied to decide arbitration issues if the underlying agreement affects interstate commerce. *E.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22 (5th Cir.1980); *Tullis v. Kohlmeyer & Co.*, 551 F.2d 632, 638 n. 8 (5th Cir.1977); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d

Cir.1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

■ RPJ has made sufficient showing that the Agreement evidences a transaction involving interstate commerce within the meaning of 9 U.S.C. § 2.[1] The record reflects evidence that Collins purchased supplies and equipment from manufacturers and suppliers in several states outside of Kentucky for purposes of performing his obligations under the contract and that RPJ sent employees from its operations in Minnesota and Ohio to Kentucky to assist Collins in connection with performing his obligations under the contract. Federal courts have consistently held that this type of activity is sufficient to satisfy the Act's requirement that the transaction involve interstate commerce. *See e.g. Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *American Home Assurance Co. v. Vecco Concrete Construction Co., Inc. of Virginia*, 629 F.2d 961 (4th Cir.1980); *Metro Industrial Painting Corp. v. Terminal Construction Co.*, 287 F.2d 382 (2d Cir.), *cert. denied*, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); *Coleman v. National Movie-Dine, Inc.*, 449 F.Supp. 945 (E.D.Pa.1978).

■ Since the Agreement affects interstate commerce, federal law and the Act are to be applied by this court, and this court need not reach the issue of the appropriate law to be applied by state courts.[2] *See Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22, 26 n. 8 (5th Cir.1980) ("We need not answer the thorny question of whether the Arbitration Act is federal substantive law that must be applied in (state) courts." [citations omitted] ). Where federal law controls, there is no basis for certifying any question of state law to the Minnesota Supreme Court under Minn.Stat. § 480.061. The fact that application of federal law may lead to a different result here than if state law were ap-

---

1. Collins has not argued that the Agreement does not affect interstate commerce, but that that should not provide a basis to apply federal law.

2. In *Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599 (Minn.1982), the Minneso-

ta Supreme Court concluded that the state arbitration statute was not preempted by the Act and that it need not apply federal law; it relied in part on the dissent in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

plied should not cause this court to abstain or to stay proceedings pending a determination of defendant's motion in state court. The abstention cases cited by defendant are inapposite. Exactly such a situation as faced here existed in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 412 (2d Cir.1969), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37.

The federal rule on the scope of arbitration is a liberal one favoring arbitration, and the arbitrator may be called upon to determine the scope of the arbitration clause.[3] *Seaboard Coast Line Railroad v. National Rail Passenger Corp.,* 554 F.2d 657 (5th Cir.1977). All doubts as to whether an arbitration clause covers a particular dispute are to be resolved in favor of coverage. *E.g., United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 564, 582–583, 80 S.Ct. 1343, 1352–1353, 4 L.Ed.2d 1403 (1960); *Resilient Floor and Decorative Covering Workers, Local Union 1179 v. Welco Mfg. Co., Inc.,* 542 F.2d 1029, 1032 (8th Cir.1976). In this case the claim of fraud in inducement of the operating Agreement is a "matter related to operations hereunder which (could not) be settled amicably" as specified in the Agreement. There is no basis to think that the fraud in the inducement issue "is of such a character that only the courts can resolve it." *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 412 (2d Cir.1969), *cert. dismissed* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

The court concludes that the arbitration panel did not exceed its powers in hearing and deciding the fraud in the inducement claim and that there is no basis for vacating the award under 9 U.S.C. § 10. Moreover, even if the panel had been wrong in assuming jurisdiction over the claim, Collins' claim of error appears to be moot, and

any error harmless, since the panel found in his favor on this issue. The award favored each party in some respects and gave RPJ less than the amount sought; it does not appear to reflect any passion or prejudice.

Collins also argues that RPJ's application for confirmation should be dismissed as untimely pursuant to 9 U.S.C. § 12. Under 9 U.S.C. § 12, Collins has three months after the award, or until December 24, 1982, to serve notice of a motion to vacate, modify, or correct the award. He argues that RPJ's present application is premature because it limits his time to determine the most prudent course of action.

There is no merit to Collins' argument that this application is premature under 9 U.S.C. § 12. 9 U.S.C. § 9 states that application to confirm an award shall be made at any time within one year after the award is made. Nothing in the statute indicates that a party may not seek confirmation of an award prior to the passage of the three months provided for seeking to vacate or modify the award.

Accordingly, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The motion of the plaintiff for an order confirming the arbitration award entered in its favor on September 24, 1982 in the amount of $225,000 is granted.

2. The motions of the defendant to vacate the arbitration award, to dismiss the application or, in the alternative, to stay the proceedings, and to certify questions of law to the Minnesota Supreme Court, are denied.

3. Judgment should be entered in favor of plaintiff against the defendant in the amount of $225,000.

LET JUDGMENT BE ENTERED ACCORDINGLY.

---

3. Minnesota courts are to independently determine issues of scope. *See e.g., U.S. Fidelity & Guaranty Co. v. Fruchtman,* 263 N.W.2d 66 (Minn.1978); *State v. Barthiaume,* 259 N.W.2d 904 (Minn.1977).