UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMERICAN HEART DISEASE
PREVENTION FOUNDATION,
INCORPORATED, a nonprofit
corporation,
Plaintiff-Appellee,

v.

BYRON C. HUGHEY; JERRY C.
WATSON; THE WATSON AND HUGHEY
COMPANY; WASHINGTON LIST;
CAPITAL LIST; FOXHALL CORPORATION,                     No. 96-1199
d/b/a The Art Department; DIRECT
RESPONSE CONSULTING SERVICES,
Defendants-Appellants,

and

ALAMEDA-FORD GROUP,
INCORPORATED; CHAPMAN RESPONSE
SERVICES, LIMITED; JOHN DOES 1-50,
Inclusive,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-95-1278-A)

Argued: September 23, 1996

Decided: February 4, 1997

Before WILKINS, Circuit Judge, BUTZNER, Senior Circuit Judge,
and MICHAEL, Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Reversed and remanded and motion to dismiss denied by unpublished opinion. Senior Judge Butzner wrote the opinion, in which Judge Wilkins and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Mark Andrew Perry, GIBSON, DUNN & CRUTCHER, Washington, D.C., for Appellants. Nicholas Theodore Christakos, SUTHERLAND, ASBILL & BRENNAN, Washington, D.C., for Appellee. **ON BRIEF:** John C. Millian, D. Jarrett Arp, GIBSON, DUNN & CRUTCHER, Washington, D.C., for Appellants. Michael J. Levin, Marc E. Sorini, SUTHERLAND, ASBILL & BRENNAN, Washington, D.C.; Terrance G. Reed, REED & HOSTAGE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

The question raised by this interlocutory appeal is whether the Federal Arbitration Act requires a stay of the district court proceedings pending arbitration of the underlying claims. 9 U.S.C. § 1 et seq. Based on a contractual agreement to arbitrate, the appellants, Watson and Hughey Company and parties related to the company (collectively W&H), sought a stay pending arbitration. Because W&H took part in extensive pretrial litigation before requesting the stay, the district court held that it had waived any right to arbitration and denied the stay. Reversing, we find that W&H's pretrial activities did not result in the type of prejudice required to establish waiver.

Our jurisdiction over W&H's interlocutory appeal is established by the Arbitration Act. 9 U.S.C. § 16(a)(1)(A). We review de novo the

2

district court's finding that W&H waived its right to arbitration. See Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc. , 817 F.2d 250, 251-52 (4th Cir. 1987).

I

In August, 1986, the American Heart Disease Prevention Foundation, Inc. (the Foundation), a nonprofit charitable organization, entered into a five-year contract with the Watson and Hughey Company, a Virginia partnership. Under the contract, the Watson and Hughey Company agreed to raise funds for the Foundation by soliciting charitable donations. The contract provides for arbitration of any claims "arising out of or relating to" the contract.

In August, 1994, the Foundation filed suit in federal district court in Kansas against the Watson and Hughey Company and several related parties. The essence of the suit is that the Watson and Hughey Company, with the assistance and cooperation of the other defendants, abused its contractual relationship with the Foundation for the purpose of defrauding the Foundation and the donating public. According to the allegations, W&H collected $26 million in donations during the term of the contract but withheld $23 million to cover fees and expenses, much of which was paid to defendants. Of course, for purposes of this appeal we are concerned only with the enforceability of the arbitration clause, not the merits of the underlying dispute. See United Food and Commercial Workers Union, Local 400 v. Shoppers Food Warehouse Corp., 35 F.3d 958, 961 (4th Cir. 1994).

All of the defendants named in the suit are related to either the Watson and Hughey Company or its sole partners, Byron Hughey and Jerry Watson. Defendant Direct Response Consulting Services (DRCS) is the successor-in-interest to the Watson and Hughey Company. DRCS is a partnership made up of two corporations, wholly owned by Byron Hughey and Jerry Watson. Defendant Foxhall Corporation is a Virginia corporation also owned by Byron Hughey and Jerry Watson. Defendants Washington List and Capitol List are fictitious business names that were used by the Watson and Hughey Company during the contract for list brokerage services. The claims against each defendant arise from the fund raising agreement between the Watson and Hughey Company and the Foundation.

3

Although the original complaint was filed in August, 1994, it was not served on the defendants until December, 1994. After receiving the complaint, W&H moved to dismiss the action for improper venue or, in the alternative, to transfer the case to the Eastern District of Virginia. At the same time, it moved to dismiss the complaint on the merits under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. In addition, it asked the court to stay discovery until it ruled on the motions.

The Kansas district court denied the stay of discovery, and discovery proceeded according to the court's scheduling order. While the case remained in Kansas, a scheduling conference was held, a discovery plan was developed, the disclosures required by Federal Rule of Civil Procedure 26 were made, documents were exchanged, W&H obtained documents from third parties, and both sides served and answered interrogatories. No depositions were taken. Then, in September, 1995, the court, responding to W&H's motion, transferred the case to the Eastern District of Virginia.

In October, 1995, W&H moved to disqualify the Foundation's counsel and one of its expert witnesses. The district court granted the disqualification motion in November. In December, after retaining new counsel, the Foundation filed an amended complaint. Before the answer was due, W&H filed a motion to dismiss the complaint or, alternatively, to stay the case pending arbitration. This was the first time any party raised the issue of arbitration--16 months after the original complaint was filed.

The district court denied the motion to stay pending arbitration. In the court's view, the motion was untimely because, before seeking the stay, W&H had engaged in 16 months of active litigation, including successfully transferring the case, taking substantial discovery, and disqualifying the Foundation's original counsel and expert witness. The court determined that the delay prejudiced the Foundation, noting particularly that it had expended considerable attorneys' fees and disclosed information to W&H that might not have been available in arbitration.

W&H appealed the denial of the stay. It also sought a stay of district court proceedings pending resolution of the appeal. We granted the stay pending appeal.

4

II

When a party to a lawsuit in federal court requests a stay pending arbitration pursuant to a written arbitration agreement, the court generally must grant the stay if two conditions are met. First, the matter must be "referable to arbitration" under the written agreement. Second, the party seeking the stay must not be "in default in proceeding with . . . arbitration." 9 U.S.C. § 3.

The issue here is whether W&H waived--and thus defaulted--its contractual right to arbitration by failing to assert that right more promptly. In light of the strong federal policy favoring arbitration, waiver will "not be lightly inferred." In re Mercury Construction Co., 656 F.2d 933, 939 (4th Cir. 1981) (en banc), aff'd sub nom. Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983). Accordingly, a party seeking to prove waiver bears a heavy burden. Walker v. J.C. Bradford & Co., 938 F.2d 575, 577 (5th Cir. 1991). Nevertheless, a delay in raising arbitration may constitute a waiver if the party objecting to arbitration can show that it has been prejudiced by the delay. Mercury, 656 F.2d at 939. Prejudice sufficient to cause waiver may arise when the party asserting the right to arbitrate actively participates in litigation in a manner that is inconsistent with that right. See Mercury, 656 F.2d at 939-40; Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985). Whether a party has waived arbitration by participating in litigation turns on the facts of each case. Tenneco Resins, Inc. v. Davy Int'l, AG, 770 F.2d 416, 420 (5th Cir. 1985).

The Foundation contends that W&H waived its arbitration rights by participating in 16 months of litigation before raising the arbitration issue. In addition to the length of the delay, the Foundation emphasizes that W&H was actively engaged in the litigation throughout that period. W&H was able to secure a venue change, disqualify the Foundation's attorney and expert witness, and obtain discovery. In the Foundation's view, these acts were inconsistent with an intent to arbitrate. The Foundation also asserts that it has been prejudiced by the delay. Specifically, it complains that it has expended considerable amounts of time and money to conduct the litigation, that W&H has received documents through discovery that might not have been avail-

5

able in arbitration, and that the district court has dismissed substantial portions of its RICO claims.

On the facts before us, we find that W&H did not waive its right to arbitration. W&H raised the arbitration issue before filing its answer to the complaint. As an affirmative defense, the existence of a binding arbitration agreement is properly pleaded in the answer. See Fed. R. Civ. P. 8(c) & 12(b). Failure to raise the issue of arbitration before the answer is filed will rarely, if ever, amount to waiver of arbitration. See Mercury, 656 F.2d at 940; but see Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). But, even assuming that failure to raise the issue of arbitration before filing an answer can constitute a waiver, there was no such waiver in this case. W&H's litigation activities were not inconsistent with a desire to arbitrate. And, perhaps more importantly, the Foundation has not demonstrated the type of prejudice required to establish waiver.

After receiving the complaint, W&H challenged the venue chosen by the Foundation. Under the Federal Rules of Civil Procedure, a defendant, at its option, may contest venue before filing an answer. Fed. R. Civ. P. 12(b)(3). By virtue of this arrangement, a party is not required to litigate any issue--including arbitrability--in an improper or inconvenient forum. Because W&H had the right to seek a transfer before it pleaded the arbitration defense, doing so was not inconsistent with a desire to arbitrate. Cf. Mercury, 656 F.2d at 940 (removing action from state to federal court does not constitute waiver); Sedco v. Petroleos Mexicanos Mexican Nat'l Oil, 767 F.2d 1140, 1144, 1150-51 (5th Cir. 1985) (finding no waiver despite three-year interval between filing of complaint and answer due to legitimate jurisdictional dispute). In addition, the fact that this case was transferred from Kansas to Virginia does not, by itself, prejudice the Foundation's position in arbitration.

Likewise, it cannot be seriously argued that W&H's successful motion to disqualify the Foundation's original counsel and expert witness was somehow inconsistent with a desire to arbitrate. Just as a party is not required to litigate the issue of arbitration in an improper or inconvenient venue, a party should not be compelled to litigate that or any other issue against ineligible counsel. Furthermore, any prejudice caused by the disqualification flows from the Foundation's use

6

of inappropriate counsel, not W&H's delay in raising the arbitration issue. In short, we reject the proposition that W&H's appropriate response to the Foundation's conduct constituted a waiver of arbitration.

Nor were W&H's discovery activities inconsistent with a desire to arbitrate. After requesting the transfer, W&H moved to stay discovery until the district court ruled on the venue motion. The court denied the stay. As a result, discovery proceeded according to a schedule established by the court. Under these circumstances, W&H's decision to participate in discovery was sensible. A party need not disregard court ordered discovery deadlines to avoid a finding of waiver. See Maxum Foundations, 779 F.2d at 982.

In addition, W&H's discovery efforts were not prejudicial to the Foundation. In order to show that pretrial discovery disclosures have caused prejudice, the party seeking to establish waiver must show that the opposing party has obtained information that would not have been available in arbitration. See Walker, 938 F.2d at 578 n.3; Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 159 (8th Cir. 1991). Beyond making a conclusory allegation to that effect, the Foundation was unable to identify--in its brief or when pressed at oral argument --any prejudicial item turned over in discovery that W&H would not have been able to obtain in arbitration. Also, there is no reason to believe that the information shared through discovery will not be as useful in arbitration as it would have been in litigation.

The Foundation also alleges that it was prejudiced by the district court's partial dismissal of its RICO claims. The difficulty with this argument is that W&H moved to dismiss the RICO claims at the same time that it requested the stay pending arbitration. So, in essence, the Foundation asks us to find that W&H impliedly waived its arbitration rights by means of the very document that expressly asserts those rights. We decline to do so. Under the Federal Rules of Civil Procedure, W&H was permitted to present alternative defenses. Fed. R. Civ. P. 8(c); American Home Assurance Co. v. Vecco Concrete Construction Co., Inc., 629 F.2d 961, 963 (4th Cir. 1980). After the stay was denied, W&H was not required, in order to avoid a finding of waiver, to abandon or postpone its other defenses in the hope that this

7

court would reverse the district court's ruling. See Tenneco Resins, 770 F.2d at 420 n.5.

The Foundation also argues that the time and money it has spent on litigation amount to sufficient prejudice to establish waiver. The unnecessary use of time and money are both factors to be considered when making the waiver determination. See Fraser , 817 F.2d at 252 (time); Kramer, 943 F.2d at 179 (time and money). However, there is no precise formula that measures how much time or money creates cognizable prejudice. Instead, both factors are viewed in context and weighed on a case-by-case basis. Kramer, 943 F.2d at 179. In this case, a substantial portion of the Foundation's investment of time and money became necessary only because it chose to file the lawsuit in an inconvenient forum, employ improper counsel, and defend both of those actions while, at the same time, prosecuting its case. Any prejudice suffered by the Foundation in this regard was a consequence of its own choices and does not establish a waiver of arbitration by W&H.

III

The Foundation also argues that the doctrine of judicial estoppel provides an independent basis for affirming the district court's ruling. The equitable doctrine of judicial estoppel prevents a litigant from gaining an unfair advantage by adopting a position "inconsistent with one earlier taken in the same or related litigation." Federal Deposit Ins. Corp. v. Jones, 846 F.2d 221, 234 (4th Cir. 1988).

In the Foundation's view, W&H adopted inconsistent positions by first seeking the transfer to Virginia and then, after securing the transfer, requesting a stay pending arbitration. If W&H had intended to raise the arbitration issue, the Foundation argues, it would have sought a transfer to New Jersey, which is the designated situs for arbitration. By seeking a transfer to Virginia without mentioning arbitration, the argument goes, W&H misled the Kansas district court into thinking that it had elected litigation over arbitration. By moving the case to Virginia, W&H was able to take advantage of this circuit's favorable RICO accrual rule. If W&H is now permitted to raise the arbitration defense in Virginia, the Foundation argues, it will have gained an unfair advantage by shifting its position on arbitration.

8

The basic difficulty with the Foundation's argument is that W&H's acts do not indicate inconsistent positions with regard to arbitration. By contesting venue, W&H asserted that the lawsuit had been filed in an improper or at least inconvenient forum. The apparent purpose of W&H's motion was to rectify this perceived error by transferring the case to a proper or convenient forum. By doing so, it did not take any position on the arbitrability of the claims at issue. It may be, as the Foundation points out, that the proper forum in which to compel arbitration is New Jersey; however, W&H sought only to stay the lawsuit, not compel arbitration. As a proper and convenient forum, the district court in Virginia has the authority to grant such a stay. 9 U.S.C. § 3; Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 452 (1935). Because W&H has not adopted inconsistent positions, the doctrine of judicial estoppel is inapplicable.

IV

The Foundation's next argument is that the arbitration clause is invalid due to fraud in the inducement. The fraud allegation relates to the status of defendants Washington List and Capital List. When the fund raising agreement was made, the Watson and Hughey Company allegedly represented that Washington List and Capital List were individual entities, separate from the Watson and Hughey Company. During the course of litigation, W&H has revealed that these entities are, in fact, fictitious business names used by the Watson and Hughey Company. The Foundation contends that the arbitration clause is invalid because it was led to believe that Washington List and Capital List were not part of the Watson and Hughey Company when it agreed to arbitrate claims against the Watson and Hughey Company.

We decline to address this issue because the Foundation did not challenge the validity of the arbitration clause in district court. See Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993).

V

The Foundation's final contention is that, even if the Watson and Hughey Company did not waive arbitration and it is entitled to a stay, the other defendants do not share this right. In support of this contention, the Foundation asserts that the other defendants cannot compel

9

arbitration because they were not parties to the fundraising contract and, as a result, do not have the right to a stay.

We need not determine whether each of the other defendants could compel arbitration because the right to a stay pending arbitration is not always coextensive with the right to arbitrate. See Morrie & Shirley Mages Foundation v. Thrifty Corp., 916 F.2d 402, 406-07 (7th Cir. 1990); but cf. IDS Life Ins. Co. v. Sunamerica, Inc., Nos. 96-2314, 96-2871, 1996 WL 725771, at *7 (7th Cir. Dec. 18, 1996). When arbitration is likely to settle questions of fact pertinent to non-arbitrable claims, "considerations of judicial economy and avoidance of confusion and possible inconsistent results . . . militate in favor of staying the entire action." American Home Assurance, 629 F.2d at 964. In such cases, the stay can apply to parties who may play no role in the arbitration. See, e.g., id. at 964. In the present case, all of the claims are based on common factual allegations and arose as the result of acts purportedly taken to satisfy the Watson and Hughey Company's contractual obligations. Under these circumstances, all litigation should be stayed.

VI

On remand, the district court should stay all litigation pending arbitration. In light of our decision, the Foundation's motion to dismiss the appeal of all appellants except the Watson and Hughey Company is moot and, accordingly, denied.

REVERSED AND REMANDED;
MOTION TO DISMISS DENIED

10